**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
JERALD D. ALBRECHT,          :
                             :  CIVIL ACTION NO. 06-2772 (MLC)
     Plaintiff,              :
                             :       MEMORANDUM OPINION
     v.                      :
                             :
CORRECTIONAL MEDICAL SERVICES,:
et al.,                      :
                             :
     Defendants.            :
_____:
```

**COOPER, District Judge**

<u>Pro se</u> plaintiff, Jerald D. Albrecht ("plaintiff"), commenced this action against George Achebe, Paul Talbot, Mary Amato, and Mary Kamau (the "Individual Defendants"), and Correctional Medical Services ("CMS"), alleging, <u>inter alia</u>, under 42 U.S.C. § ("Section") 1983, that CMS and the Individual Defendants violated his Eighth Amendment rights.  (Dkt. entry no. 1, Compl. at 1.)  Defendants now move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (Dkt. entry no. 78).  Plaintiff has not opposed the motion. The Court determines the motion on the papers and without an oral hearing pursuant to Rule 78(b).  The Court, for the reasons stated herein, will (1) grant the motion as to the federal Section 1983 claims, and (2) dismiss the Complaint without prejudice as to the state law claims, and with leave to reinstate them in state court.

**BACKGROUND**

Plaintiff, currently incarcerated in the New Jersey State Prison in Trenton, New Jersey, suffers from various medical conditions, including gallstones, Hepatitis C, irritable bowel syndrome, and a kidney condition. (Compl. at 2, 6-7; dkt. entry no. 78, Def. Br. at 2-3.) Plaintiff contends, on June 16, 2004, at approximately 4:15 a.m., he suffered an acute gallstone attack. (Compl. at 6.) After plaintiff complained of pain, prison staff summoned defendant Kamau, a registered nurse employed by CMS, to plaintiff's cell. (Dkt. entry no. 78, Chewning Certif., Ex. A at 1; Compl. at 6-7.) Plaintiff's medical records demonstrate that Kamau (1) was unable to evaluate plaintiff because he refused to turn on the light in his cell, (2) was unable to enter the cell because the requisite security staff was unavailable, and (3) notified plaintiff he would be sent to the clinic for evaluation in the morning. (Chewning Certif., Ex. A at 1.) [1]

Plaintiff was taken to the clinic at approximately 6:45 a.m., but sent back to his cell because no doctor was available. (Id. at 2.) Plaintiff returned to the clinic at 7:30 a.m., and was examined by defendant Talbot, a physician employed by CMS.

---

[1] Plaintiff contends that "he was in excruciating pain, . . . vomiting bile, and that his stomach was distended and felt like it was going to explode," and Kamau failed to provide medical assistance, leaving plaintiff on the floor of his cell in "unbearable pain." (Compl. at 6.)

(Id. at 3-5.)[2]  Plaintiff contends he "collapsed to the floor in pain in Talbot's office."  (Compl. at 9; see Chewning Certif., Ex. A at 3.)  Talbot, however, found no clinical symptoms of an acute gallstone attack, noting in his report, inter alia, "no diaphoresis, hyperventilation, tachycardia, clinical or vital signs consistent with acute distress."  (Chewning Certif., Ex. A at 3.)

Finding plaintiff not to be in need of emergency medical attention, Talbot admitted plaintiff to the infirmary for observation and management.  (Id. at 4; see Chewning Certif., Ex. B at 4.)  Plaintiff was released from the infirmary on June 17, 2004, after approximately 36 hours of observation and Talbot and the attending medical personnel noted plaintiff had no complaints, no vomiting, no stomach pain, and was resting comfortably and tolerating a regular diet.  (Chewning Certif., Ex. A at 6-10.)[3]

Plaintiff asserts, however, that he was in need of emergency medical attention on June 16, 2004, rather than mere observation

_____

[2]  Plaintiff asserts, prior to the examination by Talbot, he was seen by defendant Amato, a nursing supervisor employed by CMS. (Compl. at 7.)  Plaintiff contends, although he informed Amato of his suffering and Amato was aware of plaintiff's medical conditions, Amato "refused to provide any medical assistance, leaving plaintiff to suffer unbearable pain."  (Id. at 7-8.)

[3]  Plaintiff contends defendant Talbot knew of plaintiff's "unbearable pain after noting that plaintiff had registered 10 on the numeric pain index scale" and medical history, but "refused to provide any medical assistance, leaving plaintiff to suffer in unbearable pain."  (Compl. at 8-9.)

in the infirmary, but did not receive such care because defendant Achebe, employed by CMS as Medical Director, refused to give his approval, which plaintiff contends was required per a "de facto policy" at the prison.  (Compl. at 3, 9.)  He asserts Achebe would not approve the necessary emergency medical care in retaliation for grievances plaintiff had in the past filed against Achebe for denying plaintiff treatment for his Hepatitis C.  (Id. at 10.)  Plaintiff contends Achebe previously had "threatened to withhold treatment from plaintiff in the future, telling plaintiff 'you'll be the last one to get treatment around here.'"  (Id.)

Plaintiff further contends his gallbladder "condition was intentionally delayed and denied" from June 16, 2004, through December 29, 2004.  (Id.)  Plaintiff's medical records, however, demonstrate that medical staff continued to monitor plaintiff's condition through this time, and, in December 2004, plaintiff had elective surgery to remove his gallbladder.  (See Chewning Certif., Ex. A.)[4]  Plaintiff contends he continues to be at risk for "potentially life-threatening obstructions to his biliary system as a direct result of being denied an appropriate high

---

[4]  Plaintiff asserts defendants "created and encouraged others to create a false record of the medical emergency by falsely recording and omitting information from plaintiff's EMR records," and "surgery was delayed and denied until December 29, 2004." (Compl. at 11.)

4

fiber diet tailored to his medical condition and needs." (Compl. at 12.)

Plaintiff, after exhausting his administrative remedies, filed the Complaint on June 20, 2006, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment based on the medical care he received, First and Fourteenth Amendment rights based on defendants' alleged retaliation for pursuing grievances, and state law claims for medical malpractice, negligence, breach of contract, fraudulent concealment, and intentional and negligent infliction of emotional distress. (See id. at 13-22.)

## DISCUSSION

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met this prima facie burden, the non-movant must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). A non-movant must present actual evidence that raises a genuine issue of

material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

6

A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion. Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  Instead, Rule 56(e)(2) provides that the Court may grant the unopposed motion "if appropriate."  Id.; Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'").  An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

"If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'" Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted). Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989). Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the

pleadings and any evidence attached to the defendant's motion. Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *7 (E.D. Pa. June 20, 2000).

## II. Plaintiff's Section 1983 Federal Claims

### A. Section 1983

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law, or (2) deprived the plaintiff of a federal right. Groman, 47 F.3d at 633. "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638.

Civil rights liability cannot be predicated solely on the doctrine of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see infra Sec. III.B.2. Personal involvement in the alleged wrong-doing must be shown. Rode, 845

F.2d at 1207.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," which must be made with appropriate particularity. Id.; see Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006).

The Individual Defendants here do not contest that they acted under the color of state law.  "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State."  West v. Atkins, 487 U.S. 42, 55-56 (1988).  Medical personnel working in the prison system act under color of state law because: (a) the state authorizes the medical personnel to treat a prisoner to fulfill the state's constitutional duty to provide adequate medical care; and (b) the prisoner, due to the incarceration, has no opportunity to obtain medical care other than to accept the treatment.  See id.

**B.  Eighth Amendment Claim**

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633. Plaintiff here contends, inter alia, defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical condition by failing to provide him with emergency medical treatment during an acute gallstone attack.  (Compl. at

9

13.)  Defendants, to the contrary, contend the evidence
establishes that defendants exercised medical judgment in
evaluating and addressing plaintiff's medical condition.  (Def.
Br. at 6.)

The Eighth Amendment to the United States Constitution,
applicable to the individual states through the Fourteenth
Amendment, prohibits the states from inflicting "cruel and
unusual punishments" on those convicted of crimes.  Rhodes v.
Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against
cruel and unusual punishment requires that prison officials
provide inmates with adequate medical care.  Estelle v. Gamble,
429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable
claim for a violation of his right to adequate medical care, an
inmate must allege: (1) a serious medical need; and (2) behavior
on the part of prison officials that constitutes deliberate
indifference to that need.  Id. at 106.

The inmate first must demonstrate that his medical needs are
serious.  "Because society does not expect that prisoners will
have unqualified access to health care, deliberate indifference
to medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  Serious medical needs include those that have been
diagnosed by a physician as requiring treatment or are so obvious
that a lay person would recognize the necessity for doctor's

10

attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The inmate then must show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Also, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quotations and citations omitted).  A doctor's judgment as to the proper course of a prisoner's treatment that ultimately is shown to be mistaken

is at most medical malpractice, and not an Eighth Amendment
violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate to
undue suffering or the threat of tangible residual injury,
deliberate indifference is manifest.  Similarly, where knowledge
of the need for medical care [is accompanied by the] . . .
intentional refusal to provide that care, the deliberate
indifference standard has been met. . . . Finally, deliberate
indifference is demonstrated [w]hen . . . prison authorities
prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment."  Lanzaro, 834 F.2d at
346 (quotations and citations omitted).  "Short of absolute
denial, if necessary medical treatment [i]s . . . delayed for
non-medical reasons, a case of deliberate indifference has been
made out."  Id. (citations omitted).  "Deliberate indifference is
also evident where prison officials erect arbitrary and
burdensome procedures that result[] in interminable delays and
outright denials of medical care to suffering inmates."  Id. at
347 (quotations and citations omitted).  Compare Durmer v.
O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment
properly granted to warden and state commissioner of corrections,
against whom only allegation was they failed to respond to

12

letters from prisoner complaining of prison doctor's treatment decisions), with Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (non-physician supervisor may be liable under Section 1983 if he knew or had reason to know of inadequate medical care).

### 1.   The Individual Defendants

Although the task of discerning what constitutes a "serious medical need" under Estelle may prove difficult at times, gallbladder conditions, such as plaintiff's, are often accompanied by intense and relentless pain, and the complications that can follow push plaintiff's claim into the category of serious medical needs.  See, e.g., Brown v. District of Columbia, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (holding alleged gallbladder condition constituted a serious medical need); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986) (same).

The Court, however, will enter judgment in favor of the Individual Defendants because plaintiff has failed, by definition, to bring to this Court's attention any evidence that could conceivably raise any genuine issue of material fact as to claims for deliberate indifference.  The Individual Defendants assert that plaintiff was provided with medical care in response to his request for treatment, and has received continuous medical treatment and monitoring during his incarceration.  (Def. Br. at 7.)  They contend there was no evidence that "immediate hospitalization" of plaintiff was required or appropriate on June

13

16, 2004.  (Id. at 7-8.)  Defendants further contend that each of
the defendants who interacted with plaintiff "used their medical
judgment to determine the appropriate course of medical care" and
that the clinical signs did not substantiate plaintiff's
contentions.  (Id.)

The Court finds there is no showing that plaintiff received
deliberately indifferent care from the Individual Defendants.
Viewed liberally to plaintiff, the medical records indicate that
he was examined by a physician and admitted to the infirmary for
observation on the day he sought assistance, he was treated
pursuant to standing orders issued by a physician, and appeared
to be resting comfortably with no complaints or clinical symptoms
of acute distress.  (See Chewning Certif., Ex. A.)  His condition
was continually monitored and, upon his request, his gallbladder
was surgically removed.  (Id.)

The Individual Defendants have met their burden of
demonstrating prima facie entitlement to summary judgment on
plaintiff's deliberate indifference claims against them.  In
support of the motion, they have submitted a Statement of
Material Facts and documentary exhibits, including plaintiff's
medical records.  (Dkt. entry no. 78.)  Thus, the burden shifts
to plaintiff to show that genuine issues of material fact do
exist.  See Anderson, 477 U.S. at 249.  Plaintiff has failed to
show that anything in his medical records would have given the

14

Individual Defendants any indication that he might be receiving
inadequate treatment.  Further, plaintiff has not submitted any
objections, memoranda, affidavits, or other documents in
opposition to the motion for summary judgment.

Plaintiff in the Complaint alleges, inter alia, that each of
the Individual Defendants (1) "knew that plaintiff's medical
condition was serious, that plaintiff was in serious need of
emergency medical treatment, [] that [the prison] did not have
the staff, equipment or facilities to diagnose or treat
plaintiff's condition," and "that plaintiff was in serious need
of pain medication," (2) "ignored plaintiff's pleas for help,
refused to examine plaintiff, refused to administer emergency
first aid or pain medication, refused to implement methods for
emergency treatment, and refused to invoke procedures for
transferring plaintiff to an appropriate facility capable of
providing emergency treatment," and (3) were "obdurate and acted
outrageously, maliciously and wantonly to deprive plaintiff
medical care in order to subject plaintiff to unbearable pain and
suffering." (Compl. at 7-10, 13.)  Plaintiff, however, cannot
rely on these mere allegations to defeat a motion for summary
judgment.  See Anderson, 477 U.S. at 249.

While plaintiff also subjectively feels he did not receive
adequate care in that he should have been sent for emergency
medical procedures, the issue is not whether better medical care

could have been provided, but whether the medical care that was provided was adequate.  See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding where an inmate receives adequate medical care, but desires different modes of treatment, the care provided does not amount to deliberate indifference); Calhoun v. Volusia County, 499 F.Supp.2d 1299, 1310 (M.D. Fla. 2007).  Here, the evidence of record indicates that the medical care provided to plaintiff was at all times at least adequate under this standard.  There is nothing to indicate that the Individual Defendants recklessly or intentionally disregarded a known risk or deliberately withheld emergency medical assistance, or that plaintiff's allegations are anything more than subjective dissatisfaction or disagreement with the Individual Defendants' medical judgment.  See Farmer, 511 U.S. at 837-38; Andrews, 95 F.Supp.2d at 145; White, 897 F.2d at 110.  Therefore, the Court finds that entering summary judgment in favor of the Individual Defendants as to this claim is "appropriate" in the present case. See Anchorage Assocs., 922 F.2d 168 at 175.

### 2.  CMS

Plaintiff also seeks to hold CMS liable for the acts of its individual employees.  (See Compl. at 13.)  Defendants, however, argue that CMS cannot be liable under Section 1983 because it cannot be held vicariously liable under a theory of respondeat superior.  (Def. Br. at 9-10.)  It is well settled that the

doctrine of <u>respondeat</u> <u>superior</u> cannot be a basis for Section 1983 liability.  <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  Thus, a corporation under contract with the state cannot be held liable for the acts of its employees or agents.  <u>See</u> <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 583 (3d Cir. 2003).

CMS may, however, be held liable for the acts of an employee if those acts are deemed the result of a policy or custom of CMS, where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that CMS can reasonably be said to have been deliberately indifferent to the plaintiff's serious medical needs.  <u>See</u> <u>id.</u> at 584 (citations omitted); <u>Lamb v. Taylor</u>, No. 08-324, 2009 U.S. Dist. LEXIS 26853, at *9-*10 (D. Del. Mar. 31, 2009).  "Policy is made when a decision-maker possessing final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict."  <u>Miller v. Corr. Med. Sys.</u>, 802 F.Supp. 1126, 1132 (D. Del. 1992) (internal quotations and citations omitted).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  <u>Id.</u>

In <u>Natale</u>, the court outlined three situations in which an entity may be held liable for the actions of its employees.  318

17

F.3d at 584 n.10.  First, "where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  Id. (citations and quotations omitted).  Second, "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Id. (citations and quotations omitted).  Finally, "where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  Id. (citations and quotations omitted); see also Thomas v. Corr. Med. Servs., No. 04-3358, 2009 U.S. Dist. LEXIS 21762, at *28-*29 (D.N.J. Mar. 17, 2009).

The defendants argue that plaintiff cannot demonstrate that CMS had a policy or custom that led the medical staff to deprive plaintiff of adequate medical care.  (Def. Br. at 9-10.)  Again viewing the Complaint liberally, the Court finds plaintiff has produced no evidence to demonstrate any situation in which an alleged policy, practice, or custom of CMS suggests deliberate indifference to plaintiff's serious medical needs.  Plaintiff contends defendant Achebe "instituted a de facto policy at [the prison] which required physicians and nurses to seek and obtain

his approval before sending any prisoner to an outside hospital for emergency medical treatment." (Compl. at 9.) There is no evidence, however, that this "policy" led to deliberate indifference regarding plaintiff's, or any other prisoner's, serious medical needs. Plaintiff cannot rely on this mere allegation to defeat a motion for summary judgment. See Anderson, 477 U.S. at 249. The Court thus finds that entering summary judgment in favor of CMS as to this claim is "appropriate." See Anchorage Assocs., 922 F.2d 168 at 175.[5]

### C.  First Amendment Claim

Plaintiff further alleges a violation of the First Amendment, applicable to the state through the Fourteenth Amendment, based on defendants' alleged retaliation for pursuing grievances. An official who retaliates against an inmate for exercising constitutional rights may be liable under Section 1983. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials

---

[5]  Moreover, because the Court finds that the Individual Defendants did not violate the plaintiff's Eighth Amendment rights, a claim for vicarious liability against the corporation lacks support. See Nefferdorf v. Corr. Med. Servs., No. 04-3411, 2009 U.S. Dist. LEXIS 34073, at *14 (D.N.J. Apr. 21, 2009); Wenner v. Corr. Med. Servs., No. 04-3414, 2009 U.S. Dist. LEXIS 33493, at *15 (D.N.J. Apr. 21, 2009); see also Grazier ex rel. White v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003) (holding that an entity cannot be liable for actions of one of its officers, where a jury concluded the officer did not violate any constitutional right).

sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quotations and citations omitted).

Plaintiff contends defendant Achebe refused to provide plaintiff emergency medical treatment for the gallstone attack on June 16, 2004, in retaliation for plaintiff filing grievances against him related to treatment for Hepatitis C. (Compl. at 10.) Plaintiff further contends that all of the defendants "conspired with each other to deprive plaintiff medical care in vindictive retaliation for plaintiff's having previously exercised his right of access to the courts, and his right to petition the government for redress of grievances." (Id. at 14.)

Plaintiff has arguably engaged in conduct protected by the First Amendment by filing grievances about the medical care he was receiving and by personally complaining to prison officials. See Glenn v. Barua, 252 Fed.Appx. 493, 499 (3d. Cir. 2007); Booth v. King, 346 F.Supp.2d 751, 762 (E.D. Pa. 2004). Plaintiff, however, has failed to point to an adverse action taken against him, or a policy or custom evidencing retaliation. Defendants have produced plaintiff's medical records to show plaintiff was examined, treated, and continuously monitored for his gallbladder condition, and plaintiff has not provided evidence to contradict

these findings.  (See supra Sec. III.B.)  See Brown v. Pa. Dep't
of Corr., 271 Fed.Appx. 280, 282-83 (3d Cir. 2008).  Plaintiff
has thus failed to show an adverse action by medical personnel
sufficient to deter him from exercising his constitutional
rights.

The Complaint, furthermore, fails to suggest any nexus
between plaintiff's expressive conduct and the quality of the
treatment he received.  See Glenn, 252 Fed.Appx. at 499.  The
allegation that plaintiff received inadequate medical care
because of past grievances filed is not supported by the record.
The Court therefore concludes that plaintiff has failed to state
a First Amendment claim, and summary judgment in favor of the

defendants is "appropriate."  See Anchorage Assocs., 922 F.2d 168 at 175.[6]

---

[6]  The Court, moreover, does not find any violation of the Fourteenth Amendment.  The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV. Due process rights are divided into two areas: substantive due process, and procedural due process.  Hemphill v. Hochberg, No. 07-2162, 2008 U.S. Dist. LEXIS 50623, at *21-*22 (D.N.J. June 27, 2008).  Prisoners may rely on the Fourteenth Amendment as an avenue to challenge prison practices that deprive them of their fundamental rights.  See e.g., Pitts v. Hayman, No. 07-2256, 2008 U.S. Dist. LEXIS 31650, at *22-*26 (D.N.J. Apr. 16, 2008) (considering whether defendants' alleged failure to provide adequate medical services violated prisoner's property interest protected by due process of the Fourteenth Amendment). Plaintiff, however, has failed to present facts supporting infringement of a liberty interest.  See Ali v. N.J. Dep't of Corr., No. 08-2425, 2008 U.S. Dist. LEXIS 96061, at *30-*31 (D.N.J. Nov. 25, 2008) (magistrate judge opinion); Edwards v. Samuels, No. 06-3758, 2007 U.S. Dist. LEXIS 1325, at *33 (D.N.J. Jan. 8, 2007).  Consequently, plaintiff is unable to allege a substantive or procedural due process violation.

    The Fourteenth Amendment also ensures that a person is not denied "equal protection of the laws."  U.S. Const. amend. XIV. The equal protection clause "does not require the state to treat all persons alike."  Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983).  "To establish a violation of the equal protection clause, a plaintiff must show that the allegedly offensive categorization invidiously discriminates against the disfavored group."  Id. Plaintiff has failed to allege membership in a class or category of individuals experiencing discrimination at the hands of the defendants.  See Hemphill, 2008 U.S. Dist. LEXIS 50623, at *21-*22.  Prisoners generally do not inherently constitute a suspect classification, and state regulations of prisoners are deemed "presumptively constitutional."  Myrie v. Comm'r, N.J. Dep't of Corr., 267 F.3d 251, 263 (3d Cir. 2001).  The Complaint focuses solely on the constitutional violations allegedly experienced by plaintiff, and does not allege, expressly or impliedly, that the grievances occurred or endured due to plaintiff's membership with a particular class of persons.  Even with liberal construal of the Complaint, this Court has not been able to identify any such allegations.

### III. Plaintiff's State Law Claims

Plaintiff also alleges state law claims for medical malpractice, negligence, breach of contract, fraudulent concealment, and intentional and negligent infliction of emotional distress.  (See Compl. at 15-22.)  The Court may dismiss these remaining state law claims without prejudice to reinstate in state court.  See 28 U.S.C. § 1367(c)(3), (d) (authorizing court to decline exercise of supplemental jurisdiction over state law claim if original jurisdiction claim is dismissed, and tolling limitations period for state law claim to be brought in state court).  Thus, the Court will dismiss the state law claims without prejudice, and with leave to plaintiff to reinstate them in state court.[7]

### IV. Plaintiff's Request for Injunctive Relief

Plaintiff also seeks a preliminary and permanent injunction enjoining defendants "from taking any further retaliatory action in response to plaintiff's having filed this action."  (Compl. at 21.)  Because plaintiff has not demonstrated that he will

_____

[7]  It is unnecessary, therefore, to address the merits of defendants' motion for summary judgment in their favor for failure to comply with the New Jersey Affidavit of Merit Statute, N.J.S.A. § 2A:53A-26, et seq.  (See Def. Br. at 10-20.) Plaintiff's failure to comply with the affidavit of merit statute has no bearing on the Court's analysis of his constitutional claims against defendants. See, e.g., Seeward v. Integrity, 815 A.2d 1005, 1011 (N.J. App. Div. 2003) ("[T]he affidavit of merit statute is not a prerequisite for a federal civil rights action against a doctor who is deliberately indifferent to his or her patient's medical needs.").

ultimately succeed on the underlying claims, plaintiff has failed to meet the requisite elements necessary for an injunction.  <u>Ruiz v. New Garden Twp.</u>, 376 F.3d 203, 206 (3d Cir. 2004); <u>In re Diet Drugs</u>, 369 F.3d 293, 307 (3d Cir. 2004) ("Of primary importance, a party seeking an injunction must show that there is some legal transgression that an injunction would remedy.").  Thus, an injunction is not appropriate here.

### CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant the defendants' motion for summary judgment as to the federal Section 1983 claims, and dismiss the Complaint without prejudice as to the state law claims.  The Court will issue an appropriate Order and Judgment.


                              s/ Mary L. Cooper
                         **MARY L. COOPER**
                         United States District Judge

Dated:    June 25, 2009

24